Robert **LASLEY** and Rosa Wattree, Plaintiffs,

v.

**HERSHEY FOODS CORP.** and Hershey Pasta Manufacturing Company, Individually and as a Division and/or Subsidiary of Hershey Foods Corp. and d/b/a Hershey Pasta Group, Defendants.

No. 98–2465–JWL.

United States District Court, D. Kansas.

Jan. 27, 1999.

**1320**

David M. Peterson, Peterson & Associates, P.C., Kansas City, MO, for Robert Lasley, Rosa Wattree, plaintiffs.

Deryl W. Wynn, McAnany, Van Cleave & Phillips, P.A., Kansas City, Andrew L Levy, McNees, Wallace & Nurick, Harrisburg, PA, for Hershey Foods Corp, Hershey Pasta Manufacturing Company, Individually and as a Division and/or Subsidiary of Hershey Foods Corp. and d/b/a Hershey Pasta Group, defendants.

### MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

Plaintiffs filed suit against defendants alleging violations of 42 U.S.C. § 1981 and common law claims of intentional infliction of emotional distress and "breach of public policy." This matter is presently before the court on defendants' motion to dismiss plaintiff Rosa Wattree's complaint and to partially dismiss plaintiff Robert Lasley's complaint (doc. # 5). For the reasons set forth below, defendant's motion is granted in part and denied in part.[1] Specifically, defendants' motion is granted with respect to plaintiff Wattree's claims and her complaint is dismissed in its entirety. Defendants' motion to dismiss is denied with respect to plaintiff Las-

ley's claim of intentional infliction of emotional distress and is granted with respect to plaintiff Lasley's "breach of public policy" claim.[2]

### I. Motion to Dismiss Plaintiff Wattree's Complaint in its Entirety

Defendants move to dismiss plaintiff Wattree's claims pursuant to Fed.R.Civ.P. 12(b)(6) on the grounds that all of plaintiff's claims are barred by the two-year statute of limitations set forth in K.S.A. § 60–513(a)(4), which provides that an "action for injury to the rights of another, not arising on contract" must be brought within two years. As set forth in more detail below, the court agrees with defendants that the two-year statute of limitations applies to plaintiff's claims and, accordingly, that plaintiff's claims are barred. Accordingly, defendants' motion to dismiss is granted and plaintiff Wattree's complaint is dismissed in its entirety.

#### A. Plaintiff Wattree's § 1981 Claim

Defendant moves to dismiss plaintiff's § 1981 claim on the grounds that the claim is barred by the two-year statute of limitations set forth in K.S.A. § 60–513(a)(4). Defendant's position finds ample support in the case law. See, e.g., Goodman v. Lukens Steel Co., 482 U.S. 656, 660–62, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987) (the forum state's statute of limitations for personal injury actions provides the appropriate limitations period for civil rights claims under § 1981); Roberts v. Roadway Exp., Inc., 149 F.3d 1098, 1110–11 & n. 10 (10th Cir.1998) ("Injuries claimed under § 1981 are best characterized as injuries to personal rights, and, thus, borrow the statute of limitations period for personal injury actions."); Reynolds v. School Dist. No. 1, 69 F.3d 1523, 1532 & n. 12 (10th Cir.1995) ("Section 1981 does not specify a time period in which claims under that statute must be brought. Accordingly, we look to analogous state law for a limitations period and apply Colorado's residual two-year statute of limi-

---

1. In their response to defendants' motion, plaintiffs seek to voluntarily dismiss without prejudice their claims for breach of public policy. Nonetheless, defendants urge the court to dismiss these claims with prejudice for the reasons set forth in defendants' motion. The court agrees

that this approach is appropriate and, accordingly, addresses defendants' motion with respect to plaintiffs' breach of public policy claims.

2. Defendants have not moved to dismiss plaintiff Lasley's § 1981 claim.

tations for personal injury actions." (citations omitted)). Plaintiff Wattree urges that her claim is subject to the four-year statute of limitations set forth in 28 U.S.C. § 1658. Section 1658, enacted on December 1, 1990, provides that "a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues." The sole question presented here, then, is whether plaintiff's § 1981 claim arises under "an Act of Congress enacted after" December 1, 1990.

Section 1981 was enacted in 1870. At that time, § 1981 provided, in relevant part, that "All persons ... shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens ...." In November 1991, as part of the Civil Rights Act of 1991, Congress made significant amendments to § 1981 that substantially broadened the scope of the statute to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *See* 42 U.S.C. § 1981(b).[3] The original language of the statute, however, was not changed by the amendments.

With this framework in mind, the court turns to address plaintiff's argument that the four-year statute of limitations period set forth in § 1658 applies to her § 1981 claim. Plaintiff urges that an application of the four-year period is appropriate because the conduct on which plaintiff's complaint is based (racial harassment and discriminatory discharge) was not subject to the protections of § 1981 prior to the 1991 amendments. In other words, according to plaintiff, her cause of action arose out of the 1991 amendments to § 1981 and, thus, arose after the enactment of § 1658. Plaintiff's argument has enjoyed some recognition in this district. *See Alexander v. Precision Machining, Inc.,* 990 F.Supp. 1304, 1308 (D.Kan.1997) (apply-

ing § 1658's four-year statute of limitations to § 1981 claims arising after 1991 amendments because Congress enacted "the whole statute" in November 1991).

Nonetheless, the court here is persuaded by the reasoning of those courts that have held that § 1658 does not apply to claims arising under § 1981. *See, e.g., Lane v. Ogden Entertainment, Inc.,* 13 F.Supp.2d 1261, 1268–70 (M.D.Ala.1998) (reviewing relevant cases on both sides of the issue and concluding that § 1658 should not apply to any actions brought under § 1981); *Mason v. Anadarko Petroleum Corp.,* No. 97–1051–WEB, 1998 WL 166562, at *4–5 (D.Kan. Mar.2, 1998) (applying Kansas' two-year statute of limitations to all § 1981 claims). Those courts have emphasized that "an Act of Congress enacted" after 1990 is entirely distinct from "an Act of Congress amended" after 1990. *See, e.g., Lane,* 13 F.Supp.2d at 1268–69; *Anadarko,* 1998 WL 166562, at *5; *Jackson v. Motel 6 Multipurposes, Inc.,* No. 96–72–CIV–FTM–17D, 1997 WL 724429, at *2 (M.D.Fla. Nov.6, 1997); *Davis v. State of Cal. Dep't of Corrections,* No. S–93–1307DFL GGH, 1996 WL 271001, at *19 (E.D.Cal. Feb.23, 1996). Moreover, as Judge Brown recognized in *Anadarko,* "[g]iven the clear indication in the statute that § 1658 was intended to apply prospectively only ... the court believes that the more persuasive view is that Congress did not intend to alter the practice of borrowing state statutes of limitation for actions arising under federal civil rights acts—including § 1981—that were in existence prior to December 1, 1990." *Id.* at *5. Significantly, the legislative history of the Civil Rights Act of 1991 manifests Congress' belief that the applicable state statutes of limitations for personal injury would continue to apply to § 1981 claims even after the 1991 amendments:

> [U]nder 42 U.S.C. section 1981, which bars intentional race discrimination in employment as well as other contractual relations, victims have a longer period of time to commence suits. In the absence of an express limitations period in section 1981,

---

**3.** In *Patterson v. McLean Credit Union,* 491 U.S. 164, 180–81, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), the Supreme Court narrowly construed § 1981 to address only claims of racially discriminatory hiring and those promotion disputes in

which "a new and distinct" contractual relationship was at issue. The Civil Rights Act of 1991 overturned the Supreme Court's decision in *Patterson.*

courts applying the statute have looked to analogous state statutes of limitations. These statutes typically allow two or three years, and allow up to six years in some states. Thus, under current law, women, religious minorities and members of other protected groups must file claims within 180 days while victims of intentional race discrimination may still commence suit under section 1981 long after the expiration of this period.

H.R.Rep. No. 102–40(I), at 63 (1991), reprinted in 1991 U.S.C.C.A.N. 549, 601 (discussing a proposed amendment to the limitations period under Title VII).

In short, if Congress had intended for § 1658 to apply to amendments, they could have said so. Lane, 13 F.Supp.2d at 1270. Until Congress does say so, the settled expectations of the parties—that a two-year statute of limitations applies—should not be disturbed. See id. It was settled by the Supreme Court in 1987 that § 1981 actions should borrow the statute of limitations for personal injury in the state. Goodman v. Lukens Steel Co., 482 U.S. 656, 660–62, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987). This approach has been recognized by the Tenth Circuit as appropriate—even with respect to those § 1981 claims that arise out of the 1991 amendments. See, e.g.; Roberts v. Roadway Exp., Inc., 149 F.3d 1098, 1110–11 (10th Cir. 1998) (applying Colorado's residual two-year statute of limitations for personal injury actions to plaintiff's § 1981 retaliation claim where plaintiff's claim stemmed from amended version of § 1981); Reynolds v. School Dist. No. 1, 69 F.3d 1523, 1532 & n. 11 (10th Cir.1995) (same). Thus, the court applies the two-year statute of limitations set forth in K.S.A. § 60–513(a)(4) to plaintiff Wattree's § 1981 claim. Plaintiff's complaint alleges that she began working for defendants in 1995 and was discharged later that same year. Her complaint, filed on October 14, 1998, was brought more than two years after her discharge and, accordingly, is barred by the statute of limitations. Defendants' motion to dismiss this claim is granted.

### B. Plaintiff's Wattree's Claims for Intentional Infliction of Emotional Distress and Breach of Public Policy

Defendants move to dismiss plaintiff's claims for intentional infliction of emotional distress and breach of public policy on the grounds that these claims, like plaintiff's § 1981 claim, are barred by the two-year statute of limitations set forth in K.S.A. § 60–513(a)(4). Plaintiff does not dispute that her tort claims are governed by § 60–513(a)(4) and, indeed, the Kansas Supreme Court has so held. See Johnston v. Farmers Alliance Mut. Ins. Co., 218 Kan. 543, 548, 545 P.2d 312 (1976) (whether court construed plaintiff's claim as a claim for the tort of outrage or as a claim for retaliatory discharge, the claim was barred by the two-year statute of limitations set forth in § 60–513(a)(4)).

It is undisputed that plaintiff began working for defendants in 1995 and was discharged later that same year. Her complaint, filed on October 14, 1998, was brought more than two years after her discharge and, accordingly, is barred by the statute of limitations. See K.S.A. § 60–513(a)(4). Indeed, plaintiff appears to concede as much in her papers. See Plaintiff's Supplemental Suggestions in Opposition to Defendant's Motion to Dismiss at 1–2 (conceding that plaintiff was employed by defendants in 1995 rather than 1996 as initially pled and suggesting that defendants' motion should be denied only with respect to plaintiff's § 1981 claim based on four-year statute of limitations).[4] Defendants' motion to dismiss plaintiff Wattree's claims for intentional infliction of emotional distress and breach of public policy is granted.

### II. Motion to Dismiss Plaintiff Lasley's Claim for Intentional Infliction of Emotional Distress and Breach of Public Policy

Finally, defendants move to dismiss plaintiff Lasley's claim for intentional infliction of

---

4. In her complaint, plaintiff alleged that she was employed by defendants in 1996 and was discharged later that year. In connection with her Supplemental Suggestions in Opposition to Defendant's Motion to Dismiss, plaintiff has moved for leave to amend her complaint by interlineation (doc. # 12) to reflect that she was employed by defendants in 1995 and was discharged later that same year. Plaintiff's motion for leave to amend is granted.

emotional distress and breach of public policy pursuant to Fed.R.Civ.P. 12(b)(6). The court will dismiss a cause of action for failure to state a claim only when it appears beyond a doubt that the plaintiff can prove no set of facts in support of the theory of recovery that would entitle him or her to relief, *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Maher v. Durango Metals, Inc.,* 144 F.3d 1302, 1304 (10th Cir.1998), or when an issue of law is dispositive. *Neitzke v. Williams,* 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations, *Maher,* 144 F.3d at 1304, and all reasonable inferences from those facts are viewed in favor of the plaintiff. *Witt v. Roadway Express,* 136 F.3d 1424, 1428 (10th Cir.), *cert. denied,* —— U.S. ——, 119 S.Ct. 188, 142 L.Ed.2d 153 (1998). The issue in resolving a motion such as this is not whether the plaintiff will ultimately prevail, but whether he or she is entitled to offer evidence to support the claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

### A. Intentional Infliction of Emotional Distress

▮ As this court has previously recognized, Kansas has set a very high standard for the common law tort of intentional infliction of emotional distress or, as it is sometimes referred to, the tort of outrage. *Butler v. City of Prairie Village,* 974 F.Supp. 1386, 1406 (D.Kan.1997). Moreover, "Kansas courts have been reluctant to extend the outrage cause of action to discrimination and harassment claims." *Bolden v. PRC Inc.,* 43 F.3d 545, 554 (10th Cir.1994). To establish a prima facie case of intentional infliction of emotional distress, the plaintiff must prove the following elements: (1) the defendant's conduct was intentional or in reckless disregard of the plaintiff; (2) the defendant's conduct was extreme and outrageous; (3) there is a causal connection between the defendant's conduct and the plaintiff's mental distress; and (4) the plaintiff's mental distress is extreme and severe. *Id.* at 553 (citing *Moore v. State Bank of Burden,* 240 Kan. 382, 388, 729 P.2d 1205 (1986)); *Smith v. Welch,* 265 Kan. 868, 967 P.2d 727, 733 (1998). Under Kansas law, liability for emotional distress has two threshold requirements: (1) the defendant's conduct must reasonably be regarded as so extreme and outrageous as to permit recovery; and (2) the emotional distress suffered by plaintiff must be in such extreme degree the law must intervene because the distress inflicted is so severe that no reasonable person should be expected to endure it. *Penry v. Federal Home Loan Bank,* 155 F.3d 1257, 1264 (10th Cir.1998) (citing *Lindemuth v. Goodyear Tire & Rubber Co.,* 19 Kan.App.2d 95, 864 P.2d 744 (1993) (quoting *Roberts v. Saylor,* 230 Kan. 289, 292–93, 637 P.2d 1175 (1981))); *Welch,* 265 Kan. at 875, 967 P.2d at 733. Conduct is not extreme and outrageous unless it is regarded as being "beyond the bounds of decency and utterly intolerable in a civilized society." *Penry,* 155 F.3d at 1264 (citing *Moore v. State Bank of Burden,* 240 Kan. 382, 729 P.2d 1205 (1986)).

▮ In his complaint, plaintiff alleges that he was subjected to a racially hostile and intimidating environment during his employment at defendants' facility in Kansas City, Kansas. By way of example, plaintiff alleges that a poster depicting two monkeys was placed on the company bulletin board with the names of two black employees written beside it. Plaintiff further alleges that the words "hang the stupid nigger" were written in plaintiff's work area, although it is unclear from plaintiff's complaint exactly where in the work area the words were written. Finally, plaintiff alleges that members of defendants' management made comments such as "Most of the blacks are a bunch of lazy niggers" and "I would like to see the niggers gone."

It is unclear from plaintiff's complaint whether any of the alleged conduct or comments were directed at plaintiff or whether they even occurred in plaintiff's presence. In the absence of such evidence, defendants may ultimately prevail on plaintiff's claim at the summary judgment stage. Nonetheless, bearing in mind the standards governing a 12(b)(6) motion, the court cannot say that it appears beyond a doubt that plaintiff can prove no set of facts in support of his claim for intentional infliction of emotional distress that would entitle him to relief. As a result,

the court concludes that the plaintiff is entitled to offer evidence to support his claim and denies defendants' motion to dismiss. *See Bernard v. Doskocil Cos.*, 861 F.Supp. 1006, 1015 (D.Kan.1994) (plaintiff's claim for intentional infliction of emotional distress sufficient to survive summary judgment where plaintiff, the only African–American in the workplace, endured "a continued pattern of constant hostilities" on the basis of his race, including pranks, threats and racial slurs); *Gomez v. Hug*, 7 Kan.App.2d 603, 610–11, 645 P.2d 916 (1982) (plaintiff's claim for intentional infliction of emotional distress sufficient to survive summary judgment where plaintiff was subjected to vulgar, racist expressions and threats of violence resulting in possible serious medical problems).

### B. Breach of Public Policy

 Plaintiff Lasley also claims that he was "wrongfully terminated [and] exposed ... to a constant barrage of racial discrimination" in violation of public policy. Kansas courts have limited a cause of action for violation of public policy to two general circumstances: (1) where an employee is discharged (or demoted) in retaliation for exercising or intending to exercise his or her rights under workers' compensation laws; and (2) where an employee is discharged (or demoted) for good faith reporting or threatening to report the employer's serious infraction of rules, regulations, or law pertaining to public health, safety and the general welfare. *See Brigham v. Dillon Cos.*, 262 Kan. 12, 20, 935 P.2d 1054 (1997); *Dickens v. Snodgrass, Dunlap & Co.*, 255 Kan. 164, 176–77, 872 P.2d 252 (1994). Plaintiff's claim does not fall within either of these two categories. In his complaint, plaintiff alleges only that defendants breached the public policy against racial discrimination and retaliation found in Title VII and § 1981.

Because Kansas courts have not already recognized his claim as an exception to the employment-at-will doctrine, plaintiff must show that the conduct on which his claim is based is protected by Kansas public policy and that no alternative state or federal remedy exists. *See Butler v. City of Prairie Village*, 961 F.Supp. 1470, 1474 (D.Kan.1997). This he cannot do. Clearly, plaintiff has an adequate remedy under § 1981. In *Polson*

*v. Davis*, the Tenth Circuit held that the Kansas Supreme Court would not allow a common law cause of action for retaliatory discharge when an adequate statutory remedy exists under Kansas law. 895 F.2d 705, 709–10 (10th Cir.1990) ("[W]e believe ... that the Kansas Supreme Court would adopt the view that KAAD provides an adequate and exclusive state remedy for violations of the public policy enunciated therein."). Moreover, the Tenth Circuit has expressly held that the *Polson* rationale extends to plaintiffs seeking to assert a common law cause of action for retaliation when they have a federal statutory right. *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1399 (10th Cir. 1997) (citing *Masters v. Daniel Int'l Corp.*, 917 F.2d 455, 457 (10th Cir.1990)). Here, the same allegations support plaintiff's § 1981 claim and his breach of public policy claim. Because plaintiff has an adequate remedy available to him under § 1981, his state claim must be dismissed. *See Braun v. Dillon Cos.*, No. 94–2079–EEO, 1995 WL 261142, at *10–11 (D.Kan. Apr.19, 1995) (dismissing plaintiff's common law retaliatory discharge claim because Title VII and the KAAD provide "exclusive remedies" for alleged injuries); *Emerson v. Boeing Co.*, No. 92–1279–MLB, 1994 WL 149191 at *5 (D.Kan. Apr.1, 1994) (where same conduct supported plaintiff's claims of discrimination and state law retaliatory discharge, plaintiff's public policy claim precluded by availability of remedy under Title VII and KAAD).

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' motion to dismiss plaintiff Rosa Wattree's complaint and to partially dismiss plaintiff Robert Lasley's complaint (doc. # 5) is **granted in part and denied in part.** Specifically, defendants' motion to dismiss is **granted** with respect to plaintiff Wattree's claims. Thus, the court dismisses plaintiff Wattree's complaint in its entirety. Plaintiff's motion to dismiss is **denied** with respect to plaintiff Lasley's intentional infliction of emotional distress claim and **granted** with respect to plaintiff Lasley's claim for breach of public policy.

**IT IS FURTHER ORDERED BY THE COURT THAT** plaintiff's motion to amend

her complaint by interlineation (doc. # 12) is granted.

IT IS SO ORDERED.